**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | **25-CR-104 (ABJ)** |
| TAYON WRIGHT | : | |

## MOTION TO DISMISS INDICTMENT

After charges against Mr. Wright were dismissed by a Superior Court Judge for the failure to bring him to trial within 100 days, the United States Attorney's Office decided to move his case this Court, where the government has played and continues to play a shell game between the Superior Court and this Court to avoid the D.C. Code's 100-day limitation on pretrial detention while thwarting the federal Speedy Trial Act's time requirements for the return of indictments and trials. While the government has not disclosed its motivation for moving this case to federal court, the effect of the government's decision to move this case from Superior Court to this court is to continue Mr. Wright's pretrial detention while denying his right a speedy trial. For that reason, this Court should dismiss this matter with prejudice.

### Background[1]

According to reports, nearly one year ago, on November 19, 2024, Prince George's County police officers were pursuing a carjacked black Audi Q50 with D.C. tags into D.C. and were being assisted by Metropolitan Police Department officers.  During the pursuit, the black Audi lost control and struck a curb while being pursued by the Prince Georges's County police. collided with an unoccupied vehicle.  The driver of the black Audi exited the vehicle and briefly fled and then detained.  He was later identified as Tayon Wright.  A black Glock 19, fitted with a

---

[1] Mr. Wright does not admit that these allegations are true.

"Giggle Switch" was found on the street next to the black Audi.  Mr. Wright was searched and officer found drug-like substances on him and $152 in U.S. Currency.

### Procedural History

Mr. Wright appeared in Superior Court on November 19, 2024, and was appointed an attorney.  A probable cause hearing was held on December 12, 2024, which resulted in a finding of probable cause.  On January 14, 2025, the case was continued for a jury trial.  Motions and expert witness deadlines were set.  Several pretrial motions were filed, including a motion to suppress.  The docket showed that the motion had not been ruled on.  On February 18, 2025, a trial readiness hearing was set for February 21, 2025.   A jury trial was scheduled on February 27, 2025, which would have been 100-days from the date of Mr. Wright's arrest.  A jury trial was rescheduled for March 6, 2025.  The case was carried for trial and on March 10, 2025, the Superior Court Judge dismissed the case for want of prosecution.  Mr. Wright had been held for 111 days.

In the government's request for a continuance filed on March 9, 2025, the U.S. Attorney's Office explained that the delay was based on obtaining DNA evidence. Regardless of this excuse, the Superior Court Judge dismissed the case without prejudice for want of prosecution.

This is not the only recent case in which the government used its discretion to manipulate the timing of cases between this Court and Superior Court. *See*, *e.g.*, *Jeffrey Britt,* 25-cr-258 (JMC) (defendant arrested and detained in Superior Court on June 28, 2025; trial set for October 9, 2025; federal indictment returned August 29, 2025); *United States v. Kevin Hopkins*, 25-cr-118 (JMC) (defendant arrested and detained in Superior Court on November 20, 2024; trial set in Superior Court for May 5, 2025; federal indictment returned on April 24, 2025); *Damarqus*

*Moore*, 25-cr-115 (SLS) (defendant arrested and charged in Superior Court on January 13, 2025; motions hearing set in Superior Court for August 15, 2025; federal indictment returned April 23, 2025). *Cf. United States v. Mark Anthony Fletcher, et al.*, 25-cr-150 (TNM) (defendants arrested and detained in Superior Court on July 3, 2021; because of number of defendants and schedules, trial set for January 2025; one of three defendants moved to continue that trial date and it was continued to December 2025; the government responded to the continuance by moving charges to federal court citing an intent to move faster); *United States v. Dremale Vanterpoole*, 25-cr-138 (RJL) (government moved case to this Court after defendant released in Superior Court as a sanction for discovery violations that delayed trial, while a motion to dismiss based on government misconduct was pending in Superior Court).[2]

## Argument

**I.    THE GOVERNMENT'S DECISION TO MOVE CHARGES TO FEDERAL COURT VIOLATED MR. WRIGHT'S CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL, THWARTED THE SPEEDY TRIAL ACT, AND VIOLATED DUE PROCESS.**

The Sixth Amendment to the United States Constitution guarantees every criminal defendant the right to a speedy trial.  The government has an "affirmative constitutional obligation to try the defendant in a timely manner," and "must pursue the defendant with reasonable diligence from his indictment to his arrest." *United States v. Fernandes*, 618 F. Supp. 2d 62, 68 (D.D.C. 2009) (internal quotation marks omitted) (quoting *Doggett v. United States*, 505 U.S. 647, 656 (1992); *United States v. Graham*, 128 F.3d 372, 374 (6th Cir. 1997)). When a pretrial delay occurs, the burden is on the government to explain the delay.  *Id.*

---

[2] After an indictment was returned in federal court, the Superior Court dismissed the indictment there *with prejudice*. A motion to dismiss the indictment based on what occurred in Superior Court is now pending before Judge Leon.

The Supreme Court has identified four factors for courts to consider when determining whether the government has violated a defendant's Sixth Amendment right to a speedy trial: "Length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 538, 530 (1972); *see also Doggett v. United States*, 505 U.S. 647, 651 (1992) (relevant questions are: "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for the delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result").

An assessment of these factors in this case demonstrates that the government failed to provide Mr. Wright with a speedy trial as the Constitution requires. First, while the full length of the delay is not yet clear because the process must now restart, there is no doubt that the trial is delayed beyond the date scheduled in Superior Court. The length of the delay also should be considered in the context of the case. This is not a complex case. The stop and search of Mr. Wright is on BWC video and the government's evidence will consist of the testimony of several police officers.

The second factor also supports dismissal. The delay is attributable solely to the government. Mr. Wright and his counsel were prepared to move forward with this matter on February 27, 2025, in Superior Court. Similarly, the third factor—defendant's assertion of the right to a speedy trial—does not weigh in favor of the government. Mr. Wright sought to have the trial within the time limits of the Superior Court Rules. Finally, the fourth factor, prejudice to the defense, weighs heavily against the government. As the *Doggett* Court recognized, "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify," and "the presumption that pretrial delay has prejudiced

the accused intensifies over time." *Doggett*, 505 U.S. 654, 656. Here, delay has a very real consequence—pretrial detention.

The government's decision here also thwarted Mr. Wright's statutory rights under the Speedy Trial Act (STA), 18 U.S.C. § 3161, *et seq*. The STA requires the government to obtain an indictment within 30 days of an arrest and to begin trial within 70 days of arraignment. *See* 18 U.S.C. § 3161(b) & (c). The STA also limits the time for pretrial detention. *See* 18 U.S.C. § 3164. The trial of a defendant who is detained must begin within 90 days of detention. *Id.* If the government had brought the charges before this Court on the date of Mr. Wright's arrest, the STA would have required an indictment no later than December 19, 2024 (30 days from arrest) and a trial no later than February 27, 2025 (70 days from the last date the indictment could be returned). Under the D.C. Code bail statute, a person can be detained pretrial for no more than 100 days. *See* D.C. Code § 23-1322(h)(1) ("The case of the person detained pursuant to subsection (b) of this section shall be placed on an expedited calendar and, consistent with the sound administration of justice, the person shall be indicted before the expiration of 90 days, and shall have trial of the case commence before the expiration of 100 days."). The 100th day of Mr. Wright's detention was February 27, 2025. By filing this case first in Superior Court, then moving the case to district court, the government avoided all of these requirements.

The D.C. Circuit has held that the STA time requirements are not triggered until federal charges are filed. *See Untied States v. Knight*, 824 F.3d 1105 (D.C. Cir. 2016); *United States v. Mills*, 964 F.2d 1186 (D.C. Cir. 1992). In both *Mills* and *Knight*, however, the D.C. Circuit recognized that a due process violation could occur if the government acts deliberately. As the *Knight* court explained:

> [The defendants] also urge this Court to recognize a "ruse" exception to the Speedy Trial Act for situations where the

> Government arrests someone on D.C. Code charges with the intent
> to bring later federal charges after the Speedy Trial Act clock
> otherwise would have expired. But the Court has previously
> declined to create such an exception to the Act. In *United States v.
> Mills*, the defendants were arrested for violations of the D.C. Code.
> More than 30 days later, the Government obtained a federal
> indictment based on the same conduct. *Mills*, 964 F.2d at 1188.
> The *Mills* defendants advanced the same argument that Knight and
> Thorpe do here—namely, that without a ruse exception, the
> Government will be able to ''park'' defendants in D.C. Superior
> Court to avoid the Speedy Trial Act's 30-day clock. *See id*. at
> 1192. But the Mills Court declined to adopt a ruse exception under
> the Speedy Trial Act.
>
> Although the *Mills* Court declined to create such an
> exception under the Act, the Court recognized that a due process
> problem may arise when the Government parks a defendant in
> D.C. Superior Court to avoid the Speedy Trial Act. The Court
> stated: ''If a defendant showed that the U.S. Attorney deliberately
> arrested him on D.C. charges and secured a Superior
> Court indictment in order to gain time to gather additional
> evidence for a federal prosecution, he might have a valid due
> process claim for pre-indictment delay." *Id*.

*Knight*, 824 F.3d at 1110.

Here, the facts support a finding that the government did act deliberately to avoid both the STA time requirements and the Superior Court pretrial detention limitations. The government failed to bring the case to trial before the expiration of 100 days, resulting in a dismissal. Mr. Wright was then released.  Bringing the case to federal court resulted in Mr. Wright being detained again and getting another bite at the speedy trial apple.

## II.    THE INDICTMENT SHOULD BE DISMISSED BECAUSE THE DECISION TO BRING CHARGES IN FEDERAL COURT CONSTITUTES VINDICTIVE PROSECUTION.

The phrase "'prosecutorial vindictiveness' . . . refers to a situation in which the government acts against a defendant in response to the defendant's prior exercise of constitutional or statutory rights."  *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987) (affirming dismissals on grounds of prosecutorial vindictiveness) *(citing United States v.*

6

*Goodwin*, 457 U.S. 368, 372 (1982)). "In other words, a prosecutorial action is 'vindictive' only

if designed to penalize a defendant for invoking legally protected rights." *Meyer*, 810 F.2d at

1245. As the D.C. Circuit has explained:

> The Supreme Court has established two ways in which a defendant
> may demonstrate prosecutorial vindictiveness. First, a defendant
> may show "actual vindictiveness" – that is, he may prove through
> objective evidence that a prosecutor acted in order to punish him
> for standing on his legal rights. *See* [*Goodwin*, 457 U.S.] at 380-
> 81, 384 & n.19 . . . . This showing is, of course, exceedingly
> difficult to make. Second, a defendant may in certain
> circumstances rely on a presumption of vindictiveness: when the
> facts indicate "a realistic likelihood of 'vindictiveness[,]'" a
> presumption will arise obliging the government to come forward
> with objective evidence justifying the prosecutorial action. *See*
> *Blackledge v. Perry*, 417 U.S. 21, 27-29, 29 n. 7 . . . (1974). If the
> government produces such evidence, the defendant's only hope is
> to prove that the justification is pretextual and that actual
> vindictiveness has occurred. But if the government fails to present
> such evidence, the presumption stands and the court must find that
> the prosecutor acted vindictively.

*Id.* Although in the pretrial context the government's "decision to increase charges after a

defendant has exercised a legal right does not alone give rise to a presumption[,] . . . when

additional facts combine with this sequence of events to create such a realistic likelihood, a

presumption will lie . . . ." *Id.* at 1246. Whether a prosecution is vindictive is determined by

"focus[ing] on the conduct of the government as a whole, rather than on the conduct or

retributive sentiments of a single prosecutor." *Id.* at 1248 (*citing Thigpen v. Roberts*, 468 U.S.

27, 31 (1984)).

    In Superior Court, Mr. Wright sought a speedy trial and that trial was set for February ,

27, 2025 and then rescheduled to March 3, 20255. Prior to trial, Mr. Wright filed a motion to

suppress evidence based on violations of his Fourth Amendment Rights as well as other pretrial

motions. The government's response to Mr. Wright's exercise of his constitutional rights to a speedy trial was to bring the D.C. Code charges against him in this matter.

As in *Meyer*, the appropriate remedy for the vindictive prosecution in this case is the dismissal of all of the pending charges with prejudice. Any other remedy would "remove the deterrent effect of the doctrine of prosecutorial vindictiveness—a doctrine which the Supreme Court *designed* to be largely prophylactic in nature." *See Meyer*, 810 F.2d at 1249 (emphasis in original) (*citing Blackledge v. Perry*, 417 U.S. 21, 26 (1974)).

## III.    GOVERNMENT'S MISCONDUCT CONDUCT WARRANTS EXERCISE OF SUPERVISORY POWERS TO DISMISS CHARGES.

The government's conduct here constitutes an attempt to distort the integrity of the judicial process, warranting dismissal as a "prophylactic tool for discouraging future actions of the same nature." *United States v. Houghton*, 554 F.2d 1219, 1224 (1st Cir. 1977); *See Cf. United States v. Williams*, 504 U.S. 36, 46 (1992) (supervisory power of the court can be used to dismiss indictment for grand jury misconduct that violates rules drafted by the Supreme Court and approved by Congress to ensure integrity of the grand jury).

This case was charged in Superior Court, dismissed, and recharged here. Superior Court Rule 48 is analogous to Federal Rule of Criminal Procedure 48 which permits the government to dismiss an indictment with leave of the court. *See Ferrell v. United* States, 990 A.2d 1015, 108-19 (D.C. 2010). Rule 48 "allow[s] courts to consider the 'public interest, fair administration of criminal justice and preservation of judicial integrity'" in determining whether to grant a dismissal without prejudice. *United States v. Poindexter*, 719 F. Supp. 6, 10 n. 10  (D.D.C. 1989) (quoting *United States v. Strayer*, 846 F.2d 1262, 1265 (10th Cir. 1988)); *see also United States v. Borges*, 153 F. Supp. 3d 216, 219 (D.D.C. 2015) (same). Requiring the government to obtain leave of court to dismiss an indictment and authorizing courts to dismiss with prejudice when

appropriate prevents prosecutorial harassment by "charging, dismissing, and recharging." *Rinaldi v. United States*, 434 U.S. 22, 30 n.15 (1977); *see also United States v. Ammidown*, 497 F.2d 615, 620 (D.C. Cir. 1973) ("The primary concern [of Rule 48(a)] . . . was that of protecting a defendant from harassment, through a prosecutor's charging, dismissing without having placed a defendant in jeopardy, and commencing another prosecution at a different time or place deemed more favorable to the prosecution.").  Here, the United States Attorney's Office is using its authority to prosecute local and federal charges and Superior Court Rule 48 to harass Mr. Wright by charging, dismissing, and recharging. That is precisely the conduct the rules are designed to prevent.

## <u>Conclusion</u>

For the foregoing reasons, the Court should dismiss the indictment with prejudice.


Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER


/s/
_____
UBONG E. AKPAN
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500