## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 25-cr-104 (ABJ)** |
| **TAYON WRIGHT,**<br> **Defendant.** | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S
## MOTION TO DISMISS INDICTMENT

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to Defendant Tayon Wright's Motion to Dismiss Indictment (ECF No. 11). Defendant alleges violations of his Speedy Trial Act and constitutional rights based on the government's decision to charge him with federal offenses after first having charged him with District of Columbia Code offenses that were dismissed without prejudice in March 2025. The Court should deny Defendant's motion for the following reasons:

The Executive has broad discretion to decide when and whether to institute or dismiss criminal proceedings: "[W]here the facts support a violation of both local and federal law," the U.S. Attorney "enjoys free rein in deciding whether to prosecute in federal or in Superior Court." *United States v. Clark*, 8 F.3d 839, 842 (D.C. Cir. 1993). As found by the United States Court of Appeals for the District of Columbia Circuit, sitting *en banc*, an arrest for violations of District of Columbia Code offenses is not an arrest for a federal criminal offense and therefore does not trigger the Speedy Trial Act's 30-day indictment clock. *See United States v. Mills*, 964 F.2d 1186, 1193 (D.C. Cir. 1992) (*en banc*). The only potential exception to this rule, a deliberate arrest on D.C. Code charges so that the government may gain time to gather evidence, is not applicable here, and thus the decision to bring charges in District Court in April 2025 did not deny Defendant his Due

Process rights. Similarly, in charging Defendant in federal court, the government has not engaged in prosecutorial harassment or vindictiveness. Further, this case is not the "unusual" or "exceptional" case in which the Speedy Trial Act is followed but a Court finds a Sixth Amendment violation. Finally, even if the Court were to find a violation of Defendant's rights under the Speedy Trial Act or the Constitution, dismissal is not the appropriate remedy.

## RELEVANT BACKGROUND[1]

On November 19, 2024, members of the Metropolitan Police Department (MPD) received radio communications that officers with the Prince George's County Police Department were actively pursuing a black Audi Q50 with D.C. tags that had been taken in an armed carjacking. Officers observed the vehicle make a right turn onto 13th Street, S.E., Washington, DC, where it began to lose control and strike a curb while being pursued by the police. When officers arrived on the scene, the vehicle had crashed on the street. Officers observed Defendant fleeing on foot from the driver's seat of the vehicle. A black Glock 9-millimeter semi-automatic firearm affixed with a "giggle switch"[2] was in the street next to the vehicle. The firearm was surrounded by 21 rounds of loose ammunition with one round of ammunition in the chamber and equipped with a device that makes the pistol capable of fully automatic fire.

DNA testing was later conducted on swabs recovered from the firearm and magazine. Regarding the firearm, the DNA profile obtained from this item was interpreted as a mixture of three individuals with at least one male contributor. Analysis indicated that obtaining this mixture

---

[1] Additional details are contained in the government's Amended Memorandum in Support of Pretrial Detention, ECF No. 8, incorporated by reference.

[2] A Glock switch (sometimes called a "button" or a "giggle switch") is a small device that can be attached to the rear of the slide of a Glock handgun, changing the semi-automatic pistol into a selective fire machine pistol capable of fully automatic fire.

profile is approximately 12.1 quintillion times more likely if the DNA originated from Defendant and two unknown, unrelated individuals than if the DNA originated from three unknown, unrelated individuals. Regarding the magazine, the DNA profile obtained from this item was interpreted as a mixture of three individuals with at least one male contributor. Analysis indicated that obtaining this mixture profile is approximately 84.8 sextillion times more likely if the DNA originated from Defendant and two unknown, unrelated individuals than if the DNA originated from three unknown, unrelated individuals.

During a search incident to arrest, officers recovered amounts of various substances that field tested positive for amphetamines or cocaine base, fifteen Oxycodone pills, and $152 in U.S. currency. Subsequent testing by the D.C. Department of Forensic Sciences showed that, *inter alia*, fentanyl and cocaine base were detected in certain tested items. The quantity and variety of drugs found during the search are consistent with distribution and not personal use.

## PROCEDURAL HISTORY

On November 19, 2024, MPD officers arrested Defendant on the scene, and the government charged him by complaint in D.C. Superior Court (case number 2024 CF2 011728) with (1) one count of Unlawful Possession With Intent to Distribute a Controlled Substance While Armed, in violation of 48 D.C. Code, Section 904(a)(l), and 22 D.C. Code, Section 4502 (2001 ed.)); (2) one count of Unlawful Possession of a Firearm (Prior Conviction), in violation of 22 D.C. Code, Section 4503(a)(l) (2001 ed.)); (3) one count of Carrying a Pistol Without a License (Outside Home or Place of Business), in violation of 22 D.C. Code, Section 4504(a)(l) (2001 ed.)); (4) one count of Unlawfully Discarding a Firearm or Ammunition, in violation of 22 D.C. Code, Section 4503.04 (2001 ed.)); and (5) one count of Possession of a Machine Gun (Felony), in violation of 22 D.C. Code, Section 4514(a)(c)(2) (2001 ed.)). Defendant was detained at

presentment that same day pursuant to 23 D.C. Code, Section 1322(b)(1)(A). Under D.C. law, a defendant detained under 23 D.C. Code § 1322(b)(1)(A) must be indicted within 90 days (here, February 10, 2025), and have trial commence before the expiration of 100 days (here, February 27, 2025). *See* 23 D.C. Code § 1322(h)(1). A preliminary hearing was scheduled for November 22, 2024.

On November 22, 2024, the preliminary hearing was continued at the request of defense counsel so that the defense could have additional time to review discovery and for the parties to engage in plea negotiations. On December 4, 2024, new defense counsel was appointed and requested a continuance as a result. The government did not oppose. The defense agreed to toll the applicable indictment and trial clocks under D.C. law. Magistrate Judge Eric S. Glover tolled time under the applicable D.C. law indictment and trial clocks from November 22, 2024, to December 12, 2024. The new 100-day deadline was March 19, 2025.

On December 12, 2024, Defendant rejected the government's pre-preliminary hearing plea offer by proceeding with the hearing. Following the preliminary hearing on December 12, 2024, Magistrate Judge Glover found probable cause for (1) one count of Unlawful Possession With Intent to Distribute a Controlled Substance While Armed, in violation of 48 D.C. Code, Section 904(a)(1), and 22 D.C. Code, Section 4502 (2001 ed.)); (2) one count of Carrying a Pistol Without a License (Outside Home or Place of Business), in violation of 22 D.C. Code, Section 4504(a)(l) (2001 ed.)); (3) one count of Unlawfully Discarding a Firearm or Ammunition, in violation of 22 D.C. Code, Section 4503.04 (2001 ed.)); and (4) one count of Possession of a Machine Gun (Felony), in violation of 22 D.C. Code, Section 4514(a)(c)(2) (2001 ed.)).

On January 9, 2025, the government moved to extend the 100-day trial clock and 90-day indictment clock deadlines for good cause resulting from the recovered narcotics having not been

submitted for laboratory analysis and the expected testing-result report date falling after the 100th day, which the government computed to be March 19, 2025. The court denied this motion.

On January 14, 2025, a hearing was held where trial was scheduled for February 27, 2025 (80 days from Defendant's arrest and detention, not counting the 20 days Magistrate Judge Glover had excluded).

On February 5, 2025, a District of Columbia grand jury indicted Defendant with eleven counts of violations D.C. law: (1) Fleeing a Law Enforcement Officer, in violation of 50 D.C. Code, Section 2201.05b(b)(2) (2001 ed.)); (2) Unauthorized Use of a Vehicle, in violation of 22 D.C. Code, Section 3215 (2001 ed.); (3) Receiving Stolen Property, in violation of 22 D.C. Code, Sections 3232(a), 3232(c)(1) (2001 ed.); (4) Unlawful Possession of a Firearm (Prior Conviction), in violation of 22 D.C. Code, Section 4503(a)(1), (b)(1) (2001 ed.); (5) Carrying a Pistol Without a License (Outside Home or Place of Business), in violation of 22 D.C. Code, Section 4504(a)(2) (2001 ed.); (6) Possession of a Machine Gun (Felony), in violation of 22 D.C. Code, Section 4514(a)(c)(2) (2001 ed.); (7) Possession of a Large Capacity Ammunition Feeding Device, in violation of 7 D.C. Code, Section 2506.01(b) (2001 ed.); (8) Unlawful Discarding a Firearm or Ammunition, in violation of 22 D.C. Code, Section 4503.04 (2001 ed.); (9) Possession of Unregistered Firearm, in violation of 7 D.C. Code, Section 2502.01(a); (10) Unlawful Possession of Ammunition, in violation of 7 D.C. Code, Section 2506.01(a)(3) (2001 ed.); and (11) Reckless Driving, in violation of 50 D.C. Code, Section 2201.04 (2001 ed.).

On February 10, 2025, the government again moved for a continuance, this time to receive DNA testing results, which the laboratory expected to be completed on March 17, 2025. In addition, the government represented that an essential witness would be unavailable on the scheduled trial date. Defendant opposed the motion and represented that he had calculated the 100

days to expire on March 7, 2025. As noted above, the government believes the 100 days would have expired on March 19, 2025.

A hearing was held on February 21, 2025. The Court granted the government's motion in part and denied it in part and continued the trial to March 6, 2025 (87 days from arrest and detention, not counting the 20 days Magistrate Judge Glover had excluded). The Court held that there was not good cause for a continuance to receive the DNA testing results but granted the motion due to the unavailability of the essential witness.

On March 6, 2025, both parties called "ready" for trial. However, the case was placed on the "cert. list" and not picked up for trial. Rather, the trial was "carried" and scheduled to begin on March 10, 2025 (91 days from arrest and detention, not counting the 20 days Magistrate Judge Glover had excluded).

On March 9, 2025, the government again moved for a continuance of the trial for good cause, specifically to receive the DNA testing results, which were still anticipated from the lab on March 17, 2025.

On March 10, 2025, the court again denied the government's renewed motion to continue to receive the DNA testing results. The government then represented that it was not ready to proceed with trial. The case was dismissed for want of prosecution, without prejudice. By that time, 91 days had elapsed under the applicable detention statute, 23 D.C. Code § 1322(b)(1)(A), specifically, from November 19, 2024, to March 10, 2025 (again, not counting the 20 days excluded by Magistrate Judge Glover).

If Defendant's trial had not commenced after 100 days, then, unless the court granted a good cause extension, Defendant would have been entitled to be released pending trial. 23 D.C. Code §§ 1322(h)(3) and 1321(a). Here, the Superior Court granted a good cause extension from

November 22, 2024, to December 12, 2024, extending the last trial date to March 19, 2025. If Defendant had been released in Superior Court (and the case not dismissed), the government would have been required to indict the case within nine months of presentment (August 19, 2026). *See* 23 D.C. Code § 102. The trial would have commenced some time thereafter at the discretion of the court because District of Columbia law contains no set time limit for the trial of an indicted case when a defendant is released.

When the Superior Court case was dismissed on March 10, 2025, Defendant was taken into custody by Prince George's County, Maryland, because of an outstanding probation violation matter.

In March 2025, the government instituted a "Make D.C. Safe Again" initiative. *See* U.S. DEP'T OF JUSTICE, "'*Make D.C. Safe Again' Initiative Gets Off to Fast Start, Doubling the Monthly Average since January 2021*" (Mar. 31, 2025).[3] As part of that Initiative, the government sought to adopt a higher number of "eligible Superior Court cases into District Court." *See id.* This case was chosen for prosecution in federal court as part of that Initiative.

On April 10, 2025, a federal grand jury in the District of Columbia returned a three-count indictment against Defendant, charging him with (1) Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1); (2) Unlawful Possession with Intent to Distribute a Mixture and Substance Containing a Detectable Amount of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and (3) Using, Carrying, and Possession of a Firearm

---

[3]    *See*    https://www.justice.gov/usao-dc/pr/make-dc-safe-again-initiative-gets-fast-start-doubling-monthly-average-january-2021 (last visited October 31, 2025).

During a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i).[4] U.S. Magistrate Judge Zia M. Faruqui issued a warrant for Defendant's arrest the same day.

As noted above, Defendant was taken into custody by Prince George's County, Maryland, on March 10, 2025. On December 2, 2022, almost two years before the instant offense, a bench warrant had been issued against Defendant for a violation of the terms of his probation in Maryland case CT180380A, and it had remained outstanding until the proceedings in D.C. Superior Court concluded. Following dismissal of the Superior Court case, Defendant was arrested on the bench warrant and transported to Maryland. He had an Initial Appearance on the probation violation March 17, 2025. A hearing was then held on April 11, 2025, and another hearing set for May 30, 2025. That May 30, 2025 hearing was postponed to August 27, 2025. The August 27, 2025 hearing was then postponed to September 12, 2025.

Defendant's hearing on his probation violation in Maryland ultimately was held on September 12, 2025.[5] Defendant was arrested in this matter three days later, on September 15, 2025.

Also on September 15, 2025, Defendant was arraigned on the indictment and the government moved for detention in this case. An initial detention hearing was set for September 18, 2025, before Magistrate Judge Faruqui. As of that date, 91 days had elapsed in D.C. courts

---

[4] Contrary to Defendant's claim, the government has not charged Defendant with any D.C. Code violations in federal court. *Cf.* ECF No. 11 at 8 ("The government's response to Mr. Wright's exercise of his constitutional rights to a speedy trial was to bring the D.C. Code charges against him in this matter."). The government has charged Defendant with only federal offenses. See discussion *infra*.

[5] Defendant was scheduled to have a hearing on the Prince George's County matter in March 2025, but, as noted, the hearing was continued several times for reasons unknown to the government.

under D.C. detention statutes and 0 days under the Speedy Trial Act in District Court because the time from September 15 to September 18, 2025, was excluded due to the pending motion for detention. *See* 18 U.S.C. § 3161(h)(1)(D). On September 17, 2025, the government filed an unopposed motion for a protective order (ECF No. 7), which was granted by the Court on September 18, 2025 (ECF No. 9).

On September 18, 2025, Magistrate Judge Faruqui continued the detention hearing to September 29, 2025. A second detention hearing was held that day, and Magistrate Judge Faruqui continued the hearing again, to October 9, 2025. On October 9, 2025, Magistrate Judge Faruqui continued the detention hearing a third time, to October 21, 2025.

This Court held a status conference in this case on October 10, 2025. At that time, and with Defendant's consent, the Court excluded time from October 10, 2025, to December 5, 2025, in the interests of justice.

On October 18, 2025, Defendant filed the instant motion. Three days later, on October 21, 2025, Magistrate Judge Faruqui granted the government's motion for detention. Due to the pendency of the government's motion for pretrial detention, the entire period from September 15, 2025 to October 21, 2025 was excluded under the Speedy Trial Act. *See* 18 U.S.C. § 3161(h)(1)(D).

Defendant has remained detained since his arrest on November 19, 2024, although for most of that time, from March 10, 2025, to September 15, 2025, he was held in Prince George's County, as explained above.

## ARGUMENT

**I.    The Executive Has Broad Discretion to Decide When and Whether to Institute or Dismiss Criminal Proceedings.**

The Attorney General and the United States Attorneys "are designated by statute as the President's delegates to help him discharge his constitutional responsibility to 'take Care that the Laws be faithfully executed.'" *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting U.S. Const., Art. II, § 3)); *see also* 28 U.S.C. § 547(1). In particular, "[d]ecisions to initiate charges or to dismiss charges once brought 'lie[] at the core of the Executive's duty to see the faithful execution of the laws.'" *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016) (citation omitted). Specific to the District of Columbia, "where the facts support a violation of both local and federal law," the U.S. Attorney "enjoys free rein in deciding whether to prosecute in federal or in Superior Court." *Clark*, 8 F.3d at, 842; *see also United States v. Greene*, 489 F.2d 1145, 1151 (D.C. Cir. 1973) ("confided solely to [his] discretion"); *Hutcherson v. United States*, 345 F.2d 964, 967 (D.C. Cir. 1965) ("complete control").

By contrast, "few subjects are less adapted to judicial review than the exercise by the Executive of its discretion in deciding when and whether to institute criminal proceedings, or what precise charges shall be made, or whether to dismiss a proceeding once brought." *Newman v. United States*, 382 F.2d 479, 480 (D.C. Cir. 1967). "As a result, the presumption of regularity applies to prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties." *Fokker*, 818 F.3d at 741 (quoting *Armstrong*, 517 U.S. at 464) (internal quotation marks omitted). These "settled principles counsel against interpreting statutes and rules in a manner that would impinge on the Executive's constitutionally rooted primacy over criminal charging decisions." *Fokker*, 818 F.3d at 742. Here,

the Court should not lightly reject the government's decision to charge Defendant with violations of federal law in this case.

II.    **An Arrest for a District of Columbia Code Offense Is Not an Arrest for a Federal Criminal Offense and Therefore Does Not Trigger the Speedy Trial Act's 30-Day Clock.**

Congress has implemented a defendant's right to a speedy trial, guaranteed by the Sixth Amendment, through the Speedy Trial Act, 18 U.S.C. § 3161(b), which requires the government to secure an indictment within thirty days of a defendant's arrest on federal charges. 18 U.S.C. § 3161(b). Section 3161(b) uses the term "offense," which is defined under § 3172(2) to mean "any Federal criminal offense which is in violation of any Act of Congress and is triable by any court established by Act of Congress (other than a Class B or C misdemeanor or an infraction, or an offense triable by court-martial, military commission, provost court, or other military tribunal)." 18 U.S.C. § 3172(2). It is well established that an arrest for a District of Columbia Code offense is not an arrest for a federal criminal offense and therefore does not trigger the Speedy Trial Act's 30-day clock. *Mills*, 964 F.2d at 1193; *United States v. Knight*, 824 F.3d 1105, 1109 (D.C. Cir. 2016).

In *Mills*, the D.C. Circuit, sitting *en banc*, reasoned as follows:

> The [Speedy Trial] Act defines "offense" as "any Federal criminal offense." Thus[,] the trigger mechanism is the arrest or service of summons "in connection with such charges." The sole possible referent for "such charges" is the "offense" charged in the indictment, which because of the definition must be a federal offense. Under the most natural reading, then, an arrest starts the clock only if it is "in connection with" *federal* charges. If, as was the case here, the arrest was accompanied by a complaint charging violations of the D.C. (not U.S.) Code, it was not "in connection with" federal charges.

964 F.2d at 1188-89 (citation and footnote omitted).

11

In *Mills*, co-defendant cases were transferred from Superior Court to District Court far more than 30 days after their arrests (seven months for one codefendant and one year for the other). 964 F.2d at 1188. The transfer followed a presidential announcement of a new policy for combatting drugs in the District of Columbia, which called for prosecution of more drug cases in federal court. *Id*. The court held that there was no Speedy Trial Act violation because the arrest and charging in Superior Court did not trigger the 30-day federal indictment clock. *Id*. at 1193. Likewise, in *Knight*, the defendant's case was transferred from Superior Court to District Court approximately three months after his arrest. 824 F.3d at 1109. The District Court held that the defendant's arrest for a D.C. Code offense did not trigger the 30-day indictment clock. *Id*. at 1110. The same principles apply here.

### III.    The Decision to Charge Defendant in District Court Did Not Deny Defendant His Due Process Rights.

Although, as explained above, *Mills* and *Knight* make clear that arrest and charging in Superior Court does not trigger the 30-day federal indictment clock, both cases note that a Due Process problem may arise where a defendant is "deliberately arrested on D.C. Code charges in order for the Government to gain time to gather evidence for a federal prosecution." *Knight*, 824 at 1110; *Mills,* 964 F.2d at 1192 ("If a defendant showed that the U.S. Attorney deliberately arrested him on D.C. charges and secured a Superior Court indictment in order to gain time to gather additional evidence for a federal prosecution, he might have a valid due process claim for pre-indictment delay."). No such problem exists in this case.

Here, Defendant was not deliberately arrested on D.C. Code charges to allow the government more time to gather evidence. Rather, he was arrested on those charges based on the government's prosecutorial discretion to bring charges in either D.C. Superior Court or District Court. Around the time the case was dismissed in March 2025, the government had begun the

"Make D.C. Safe Again" Initiative, and Defendant's case was found eligible and appropriate for federal charges. Accordingly, it was a change in policy rather than any deliberate "parking" that resulted in the case being charged federally in April 2025.

It is true that the government secured additional evidence for the prosecution after Defendant's case in Superior Court was dismissed. The DNA evidence described above was received by the government on or about March 25, 2025. The drug testing results also were received on or about that same date. At the same time, since the Superior Court case was dismissed without prejudice, the government could have used this same evidence in a subsequent prosecution of Defendant in Superior Court. Defendant points to no advantage gained by the government through initially charging the case in Superior Court. Indeed, the government has not gained any unfair advantage by initially charging the case in Superior Court, and the decision to initiate charges in District Court, as opposed to reinstituting them in Superior Court, has in no way prejudiced Defendant's ability to mount a defense. As addressed below, the only type of prejudice identified by Defendant is that of pretrial detention. *See* ECF No. 11 at 4-5.

### IV. In Charging Defendant in Federal Court, the Government Has Not Engaged in Prosecutorial Harassment or Vindictiveness.

The defense makes only bare allegations of prosecutorial misconduct and vindictiveness, ECF No. 11 at 6-8, all of which are without merit.

"The Due Process Clause prohibits prosecutors from 'upping the ante' by filing increased charges in order to retaliate against a defendant for exercising a legal right." *United States v. Slatten*, 865 F.3d 767, 798-99 (D.C. Cir. 2017) (citation omitted). Because prosecutors have "broad discretion to enforce the law," however, to succeed on a claim of vindictive prosecution, the Defendant must establish that any "increased charge was 'brought *solely* to penalize' [him] and could not be justified as a proper exercise of prosecutorial discretion." *Id.* (citation omitted). A

13

defendant may prove prosecutorial vindictiveness by submitting either "(i) evidence of the prosecutor's actual vindictiveness or (ii) evidence sufficient to establish a realistic likelihood of vindictiveness, thereby raising a presumption the Government must rebut with objective evidence justifying its action." *United States v. Safavian*, 649 F.3d 688, 692 (D.C. Cir. 2011) (internal quotation marks omitted) (quoting *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987), *reh'g en banc granted, opinion vacated*, 816 F.2d 695 (D.C. Cir. 1987), and *opinion reinstated on reconsideration sub nom. Bartlett on Behalf of Neuman v. Bowen*, 824 F.2d 1240 (D.C. Cir. 1987)). !

Defendant asserts, "Prior to trial, Mr. Wright filed a motion to suppress evidence based on violations of his Fourth Amendment Rights as well as other pretrial motions. The government's response to Mr. Wright's exercise of his constitutional rights to a speedy trial was to bring the D.C. Code charges against him in this matter." *Id*. at 7-8. This claim is misleading at best.

The defense filed its motion to suppress on January 23, 2025, and the government filed its opposition on February 7, 2025. The trial judge decided to schedule the hearing on the motion the morning of trial. Because the case was dismissed on March 10, 2025, no hearing was held. Defendant was indicted in this case on April 10, 2025—nearly three months after Defendant filed his motion. Moreover, as detailed above, the government moved for a continuance in Superior Court three times—on January 9, February 10, and March 9, 2025. Because Judge Israel did not grant the government the time it needed to prepare for trial, including receiving DNA testing results, the government stated that it was not ready for trial on March 10, 2025, and the case was dismissed without prejudice. After the case had been dismissed, this office made the decision to prosecute Defendant in federal court. There is no evidence this decision was prompted by defendant's filing of a motion to suppress in January 2025 or his assertion of his speedy trial rights

in Superior Court. Rather, as explained above, that decision was the result of a change in office policy.

Defendant offers no evidence of vindictiveness but alleges a presumption of vindictiveness based on the timing of the charges in District Court. Defendant argues that the decision to prosecute him in federal court was done either in relation for Defendant's filing a suppression motion or for his requesting a speedy trial. ECF No. 11 at 7-8. This argument is wholly without merit.

"To invoke the presumption of vindictiveness, [the court] must find that a reasonable likelihood of vindictiveness exists—that is, that the second indictment was 'more likely than not attributable to the vindictiveness on the part of' the [g]overnment." *United States v. Gary*, 291 F.3d 30, 24 (D.C. Cir. 2002) (quoting *Alabama v. Smith*, 490 U.S. 794, 801 (1989)). A pretrial decision "to modify the charges" alone will not raise such a presumption because a prosecutor must "remain free before trial to exercise the broad discretion entrusted to him to determine "the extent of the societal interest" in a given prosecution. *United States v. Goodwin*, 457 U.S. 368, 380–82 (1982). "Where the defendant provides evidence sufficient to support a presumption of vindictiveness, the burden shifts to the government to produce 'objective evidence' that its motivation in charging the defendant was lawful." *United States v. Meadows*, 867 F.3d 1305, 1312 (D.C. Cir. 2017) (citation omitted). "That burden is 'admittedly minimal—any objective evidence justifying the prosecutor's actions will suffice.'" *Meadows*, 867 F.3d at 1312 (quoting *Safavian*, 649 F.3d at 694). If the government can produce objective evidence that its motive in prosecuting the defendant was not vindictive, then "the defendant's only hope is to prove that the justification is pretextual and that actual vindictiveness has occurred." *Meyer*, 810 F.2d at 1243.

Defendant's conjecture about the timing of the indictment in District Court does not give rise to a presumption of vindictiveness. First, as explained above, the Superior Court case was

dismissed without prejudice on March 10, 2025, 30 days before the indictment issued in this case. The government then had the broad discretion to decide whether to (1) reinstitute the charges in Superior Court, (2) initiate charges in District Court, or (3) not bring charges at all. Second, even assuming the charges in this case constitute an increase in charges,[6] "proof of a prosecutorial decision to increase charges after a defendant has exercised a legal right does not alone give rise to a presumption [of vindictiveness] in the pretrial context" because "this sequence of events, taken by itself, does not present a 'realistic likelihood of vindictiveness.'" *Meyer*, 810 F.2d at 1246 (quoting *United States v. Goodwin*, 457 U.S. 368, 384 (1982)).

Moreover, there was ample legitimate justification to charge this case in federal court. In this jurisdiction, courts have upheld the government's efforts to dismiss charges against a defendant in Superior Court and then charge the defendant in District Court to take advantage of more favorable federal sentencing practices. *See, e.g., United States v. Mills*, 925 F.2d 455, 461 (D.C. Cir. 1991) (holding, in a case in which the government dismissed Superior Court cases to bring charges in district court, that the "U.S. Attorney for the District of Columbia may elect to prosecute a given criminal defendant on federal rather than District [of Columbia] charges, even though the former carry stiffer penalties. In fact, the prosecutor may select one alternate charge over another precisely *because* the selected offense carries a more severe sentence.") (citing *Hutcherson v. United States*, 345 F. 2d 964, 967 (D.C. Cir. 1965) ("A defendant has no constitutional right to elect which of two applicable statutes shall be the basis of his indictment and prosecution. That choice is to be made by the United States Attorney."); *United States v.*

---

[6] While the charges in Superior Court and District Court are based on the same operative facts from November 19, 2024, there is no overlap in the charges whatsoever.

*Batchelder*, 442 U.S. 114, 124-25 (1979)) (emphasis in original);[7] *United States v. Simmons*, No. 18-344 (EGS), 2022 WL 1302888, at *19-20 (D.D.C. May 2, 2020) (no prosecutorial harassment where the government charged a defendant in Superior Court, indicted him in federal court and then dismissed the Superior Court case, because the government believed that the defendant's criminal history merited a federal charge and a more just sentence); *United States v. Gerald*, 5 F.3d 563, 566 (D.C. Cir. 1993) (rejecting vindictiveness claim that government's transfer of his case to federal court was improper because it was made for the purpose of taking advantage of the higher penalties available under the U.S. Sentencing Guidelines).

Here, Defendant had prior convictions from case no. CT180380A in Prince George's County in November 2021 for Armed Carjacking and Possession of a Regulated Firearm Under the Age of 21 for which Defendant received a sentence, in July 2022, of 30 years in jail, all but 4 years and 215 days of which were suspended, and 5 years of supervised release. Defendant had been in pretrial custody since his arrest in March 2018, and his supervised release began on July 15, 2022. The seriousness of this prior conviction, coupled with the facts of the instant case, support the government's decision to charge Defendant with federal offenses as part of the "Make D.C. Safe Again Initiative" described above. Defendant's claims of prosecutorial harassment or vindictiveness are baseless.

## V.    Defendant Has Not Suffered a Prejudicial Delay Cognizable Under the Sixth Amendment's Speedy Trial Clause.

As detailed above, *Mills* and *Knight* foreclose Defendant's statutory argument. That should be the end of the matter: Although "[t]he absence of a Speedy Trial Act violation does not *ipso*

---

[7] The *Mills* case previously discussed is the D.C. Circuit *en banc* rehearing in *Mills* to reconsider the panel's Speedy Trial Act holding. The *en banc* court declined to "disturb" the panel's due-process holding. *See Mills*, 964 F.2d at 1188 n.3.

*facto* defeat a Sixth Amendment speedy trial claim," it is "an 'unusual case' in which the Act is followed but the Constitution is violated. . . . Even more exceptional must be the case in which the Act is followed but there is a clear or obvious Sixth Amendment error." *United States v. Rice,* 746 F.3d 1074, 1081 (D.C. Cir. 2014) (citations omitted). This is not that "exceptional" or "unusual" case. Nevertheless, in this section, the government addresses Defendant's argument that the government's decision to prosecute him federally violated the Sixth Amendment's Speedy Trial Clause. *See* ECF No. 11 at 3-5.

The Sixth Amendment provides, in pertinent part, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. Unlike its statutory counterpart, the constitutional speedy-trial right "is amorphous, slippery, and necessarily relative. . . . It is consistent with delays and dependent upon circumstances." *Vermont v. Brillon,* 556 U.S. 81, 89 (2009) (cleaned up and citations omitted). "Excessive delay in prosecuting a defendant after he is indicted or arrested violates this Sixth Amendment right." *United States v. Demirtas*, 204 F. Supp. 3d 158, 170 (D.D.C. 2016) (quoting *United States v. Tchibassa*, 452 F.3d 918, 922 (D.C. Cir. 2006)). "In deciding a speedy trial claim a court applies a 'balancing test, in which the conduct of both the prosecution and the defendant are weighed.'" *Tchibassa*, 452 F.3d at 923 (quoting *Barker v. Wingo,* 407 U.S. 514, 530 530 (1972)) (cleaned up).

The Supreme Court has identified four factors to be considered: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant." *Tchibassa*, 452 F.3d at 922-923 (citing *Doggett v. United States*, 505 U.S. 647, 651 (1992); also citing *Barker,* 407 U.S. at 530)). No one factor is dispositive. *Tchibassa*, 452 F.3d at 923 (citing *Barker,* 407 U.S. at 533). Each of these factors is discussed below.

### A.  Length of Delay

As the Supreme Court has made clear, "Simply to *trigger* a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Doggett*, 505 U.S. at 651–52 (emphasis added). As a benchmark, a delay between accusation and trial of more than one year is considered presumptively prejudicial. *United States v. Ransom*, 465 F.2d 672, 673 (D.C. Cir. 1972) (identifying "a delay of more than one year between arrest and trial as giving 'prima facie merit' to a Sixth Amendment challenge") (citations omitted). Where a delay exceeds one year, "the presumption that pretrial delay has prejudiced the accused intensifies over time." *United States v. Taylor*, 497 F.3d 673, 677 (D.C. Cir. 2007) (quoting *Doggett*, 505 U.S. at 652). Courts have varied in their treatment of delays of just under one year. *Compare Gerald*, 5 F.3d at 566 (eleven month delay does not give rise to a presumptive violation of the Sixth Amendment); *United States v. White Horse*, 316 F.3d 769, 774 (8th Cir. 2003) (9-and-a-half-month delay not presumptively prejudicial); *and United States v. Cope*, 312 F.3d 757, 777 (6th Cir. 2002) (9-month delay not presumptively prejudicial), *with United States v. Brown*, 498 F.3d 523, 530 (6th Cir. 2007) ("assum[ing] without deciding that the nearly ten-month delay is presumptively prejudicial," necessitating discussion of remaining *Barker* factors), *and Norris v. Schotten*, 146 F.3d 314, 327 (6th Cir. 1998) ("presum[ing] the delay of eight months to be prejudicial"). Here, Defendant has not made that required initial showing.

At this stage of the case, as Defendant concedes, *see* ECF No. 11 at 4, the length of any delay remains unknown. At most, and assuming, *arguendo*, the correct starting date is the date of Defendant's arrest on November 19, 2024, and not his arrest in this case on September 15, 2025 (*see* discussion at Part II *supra*), Defendant can claim an actual delay of just over 11 months. But

that number ignores both the delays to which Defendant has agreed (addressed below) and the five-month delay due to Defendant's detention in Maryland. Excluding those times, the delays are the 91-day delay in the Superior Court case (discussed above) and the 30-day delay between the dismissal of the Superior Court case and the indictment in this case.

Those delays total approximately four months and, accordingly, do not even approach the one-year threshold needed to trigger the *Barker* analysis. Defendant points to no case (and the government is aware of no case) in which a 91-day delay was cognizable under the Sixth Amendment. Indeed, the D.C. Circuit has upheld much longer delays against speedy trial challenges. *See, e.g., Tchibassa*, 452 F.3d at 922 (delay of nearly eleven years); *United States v. Lopesierra-Gutierrez*, 708 F.3d 193, 202-03 (D.C. 2013) (delay of three-and-a-half years). Defendant's post-arrest delay thus far is not even out of the ordinary for federal defendants, *see, e.g., United States v. Diante Brewer*, 25-cr-254-SLS (133 days from arrest to scheduled suppression hearing); *United States v. Da'jon Malloy*, 25-cr-93-MJS (217 days from arrest to ruling on motion to suppress); *see Gerald*, 5 F.3d at 566 (eleven month delay does not give rise to a presumptive violation of the Sixth Amendment); *White Horse*, 316 F.3d at 774 (nine-and-a-half-month delay not presumptively prejudicial); *Cope*, 312 F.3d at 777 (nine-month delay not presumptively prejudicial).

Additionally, viewed from the perspective of the District Court case, the pretrial delay is even less substantial. Had federal offenses been charged against Defendant from the onset, the government would have been entitled to thirty days to obtain an indictment (until December 19, 2024), 18 U.S.C. § 3161(b), and an additional seventy days before trial (until February 27, 2025). 18 U.S.C. § 3161(c)(1). Clocks would have tolled for delays resulting from pretrial motions such as the government's motions for detention and for a protective order (discussed above), which

have excluded 36 days from the Speedy Trial clock. Had Defendant filed a motion to suppress in District Court, as he did in Superior Court, there would have been further delays. A motion to suppress automatically tolls the Speedy Trial Act clocks. *United States v. Tinklenberg*, 563 U.S. 647, 655 (2011). Similar motions in § 922(g) cases routinely have taken at least two months or more to resolve. *See, e.g., United States v. Derrell Willliams, II*, 25-cr-158-RDM (two-month delay between filing of suppression motion and denial of that motion); *Malloy*, 25-cr-93-MJS (three-month delay between filing of suppression motion and granting of that motion in case in which defendant was detained pending trial); *United States v. Devin Devaun,* 24-cr-44-TSC (five-and-a-half-month delay between filing of suppression motion and denial of that motion). Accordingly, even assuming no other delays had resulted, trial would not have been required to commence until late early July 2025. *Cf.* ECF No. 11 at 5 (stating that the STA would have required a trial no later than February 27, 2025). At most then, Defendant's trial has been delayed by less than four months—and that delay is attributed entirely to Defendant's being held in Prince George's County on the probation violation and not to any actions taken by the government in either Defendant's Superior Court case or this case. Accordingly, the length of the delay favors the government.

Moreover, had this case remained in Superior Court, even after 100 days, Defendant's case would not have been dismissed. Rather, after 100 days (March 19, 2025), Defendant could have contested his detention and would have been released unless the court found a good cause for the delay. *See* 23 D.C. Code § 1322(h)(1) and (3). The trial would have commenced some time thereafter, at the discretion of the court, since District of Columbia law contains no set time limit for the trial of an indicted case if a defendant is released. The Code presumes, therefore, that a

nine-month delay between arrest and indictment[8] (not even arrest and trial) will be consistent with the Speedy Trial Clause of the Sixth Amendment. And no provision of District of Columbia law provides for dismissal—much less dismissal with prejudice—due to a trial not commencing within 100 days.[9]

Further, the Court could address these delays by setting this case on an expedited schedule, which would mitigate any prejudice to Defendant.

### B. Reasons for Delay

The most important of the four factors is the reason for the delay. *United States v. Rodriguez*, No. CR 19-224 (TJK), 2023 WL 5740493, at *3 (D.D.C. Sept. 6, 2023) (citing *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986)). This factor weighs in favor of a finding of no Sixth Amendment violation.

As an initial matter, the government concedes it is responsible for any pretrial delay that results solely from Defendant's having been first charged in Superior Court. At the same time,

---

[8] Here, Defendant was arrested on November 19, 2024, and arraigned on February 21, 2025, resulting in an additional three-month delay that did not run afoul of any District of Columbia law.

[9] Publicly available data on the average length of pretrial detention at D.C. Department of Corrections (DOC) facilities is difficult to find. However, statistics published by DOC indicate that, for men (like Defendant), the average length of stay for "[w]eapons" offenses is 189 days; for "[d]rug [o]ffenses" it is 222 days; for "[r]obbery/[c]arjacking/[b]urglary" it is 227 days; and for "[o]ther [f]elony [o]ffenses" (i.e., excluding homicide, conspiracy, kidnapping, rape, sex abuse, and other violent crimes), it is 248 days. *See* DC Department of Corrections, Facts and Figures at 20 (April 2025), available at https://doc.dc.gov/sites/default/files/dc/sites/doc/publication/attachments/DC%20Department%20of%20Corrections%20Facts%20and%20Figures%20April%202025.pdf. Although this data apparently does not distinguish between pre- and post-trial detention (*i.e.*, time spent at DOC facilities pending sentencing or while serving a misdemeanor sentence), the majority of the "weapons" and "other felony offenses" data likely reflects pretrial detention, given that felony sentences are typically served at federal Bureau of Prisons facilities. As such, that data indicates that the Defendant's detention in this case has not been atypical by Superior Court standards.

such delay was not a result of bad faith, and the D.C. Code charges could have been reinitiated, which also would have restarted the speedy trial clock. Even if the Court concludes that the government moved too slowly in identifying the case for federal prosecution and proceeding with its federal indictment, negligent delay is considered in light of whether the delay caused a "particularized trial prejudice," *Doggett*, 505 U.S. at 657–58 (discussing a six-year delay caused by government negligence). No such particularized prejudice is alleged or exists here, as discussed below.

Beyond the decision to charge Defendant in Superior Court in the first instance, the delays from March 10, 2025, the date of the D.C. Code charges were dismissed without prejudice, and the present, have been reasonable. First, there was a delay from March 10, 2025, to April 10, 2025, the date Defendant was indicted in this case and a federal warrant issued for his arrest. It takes time to present a case to a grand jury. A prosecutor must review evidence, prepare exhibits, and identify witnesses. In addition, there are routine logistical hurdles. Thirty days to evaluate the case for federal charges, review the evidence, and prepare and present this case for indictment was reasonable.

Second, there was a delay from April 10, 2025, to September 15, 2025, all of which was due to Defendant's being in custody on a probation violation in Maryland and the numerous continuances of his probation violation hearing that ultimately was held on September 12, 2025. All time since September 15, 2025, through and including December 5, 2025, has been excluded by virtue of pending motions and with Defendant's consent (or at least in the absence of any objection).

The government has acted rationally and has pursued the charges against Defendant with reasonable diligence and serious effort. This case was identified for federal prosecution in March

23

2025 as part of the government's "Make D.C. Safe Again" Initiative. A 30-day delay due to preparation of charges in the instant case is reasonable. The four-month delay due to Defendant's incarceration in Maryland was outside the government's control and not a result of any negligence.

### C. Defendant's Assertion of His Right to a Speedy Trial

This factor also weighs in favor of the government. Despite Defendant's claim, *see* ECF No. 11 at 4, that he "sought to have the trial within the time limits of the Superior Court Rules" Defendant has not consistently asserted his right to a speedy trial. For example, Defendant sought and received a 20-day continuance in the Superior Court case due to change of counsel. Moreover, Defendant has agreed to Speedy Trial Act exclusions in this case. *See United States v. Bikundi*, 926 F.3d 761, 780 (D.C. Cir. 2019) ("[Defendant] Florence consented to exclusion of time under the Speedy Trial Act and did not assert her speedy trial rights early or often.").

### D. Prejudice

In explaining the factor of prejudice, the Supreme Court wrote:

> A fourth factor is prejudice to the defendant. Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, *the most serious is the last*, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past.

*Barker*, 407 U.S. at 532 (emphasis added).

Regarding the "most serious" factor described in *Barker*, impairment of the defense, Defendant offers no discussion at all. ECF No. 11 at 4. Instead, beyond a vague claim that "excessive delay presumptively compromises the reliability of a trial," ECF No. 11 at 4 (quoting *Doggett*, 505 U.S. at 656), Defendant points only to the prejudice of pretrial detention. ECF No.

24

11 at 4-5. While "oppressive pretrial incarceration" can justify a finding of prejudice, *Barker*, 407 U.S. at 532, "[w]ithout more, [Defendant's] confinement, while understandably unpleasant, does not establish prejudice sufficient to support his Sixth Amendment claim." *United States v. Taylor*, No. CR 18-198 (JEB), 2020 WL 7264070, at *10 (D.D.C. Dec. 10, 2020) (citations omitted); *see Bikundi*, 926 F.3d at 780 ("[Defendant] Florence offers no explanation of how the delay impaired her defense, and thus fails to show that her Sixth Amendment right to a speedy trial was violated."); *United States v. Morss*, No. 1:21-cr-00040-5 (TNM), 2022 WL 2072625, at *3 (D.D.C. June 9, 2022) ("Morss includes no 'specific, articulable' incident where his detention has hindered the preparation of his defense.") (quoting *Tchibassa*, 452 F.3d at 927).

Moreover, the facts of this case demonstrate that Defendant is not prejudiced. Body-worn camera video captures most of the operative evidence, and neither that nor the scientific testing results are impacted by the passage of time. This is not a case where witness testimony, impacted by the passage of time, becomes less reliable or unavailable.

## VI.    Dismissal Is Not the Appropriate Remedy.

Defendant argues that this Court should exercise its supervisory authority to dismiss the case entirely due to the government's "misconduct." ECF No. 11 at 8. A court may dismiss an indictment based upon its inherent authority only if the government engaged in misconduct, the defendant was prejudiced, and no less severe remedy was available to address the prejudice. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 254-56, 263 (1988); *United States v. Chapman*, 524 F.3d 1073, 1087 (9th Cir. 2008) ("A court may dismiss an indictment under its supervisory powers only when the defendant suffers substantial prejudice and where no lesser remedial action is available") (citations omitted). "The supervisory power doctrine is an extraordinary one which should be 'sparingly exercised.'" *United States v. Jones*, 433 F.2d 1176, 1181–82 (D.C. Cir. 1970)

(citations omitted). "[D]ismissal of an indictment with prejudice is the most severe sanction possible. Such dismissal exercised under the guise of 'supervisory power' is impermissible absent a clear basis in fact and law for doing so." *United States v. Slough*, 679 F. Supp. 2d 55, 61 (D.D.C. 2010) (quoting *United States v. Isgro*, 974 F.2d 1091, 1097 (9th Cir.1992)). In the context of prosecutorial decisions, "the federal judiciary's supervisory powers over prosecutorial activities that take place outside the courthouse is extremely limited, if it exists at all." *United States v. Lau Tung Lam*, 714 F.2d 209, 210 (2d Cir. 1983) (citations omitted).

Here, the government has not engaged in any misconduct, the extent of any delay in resolving Defendant's case is minimal, and the government has in no way prejudiced Defendant from presenting a defense. Indeed, Defendant does not even allege any such prejudice. The only prejudice Defendant alleges here is extended pretrial detention. That condition was properly imposed in Superior Court after a judge found probable cause and concluded that no condition or combination of conditions could ensure the safety of the community, and it was properly imposed here following the several detention hearings before Magistrate Judge Faruqui. To the extent the Court is inclined to impose a remedy, release—not dismissal with prejudice—should be the only remedy the Court considers.[10]

## CONCLUSION

Because (1) the Executive has broad discretion to decide when and whether to institute or dismiss criminal proceedings; (2) the delays in this case do not rise to a statutory or constitutional speedy trial violation or a denial of Due Process; (3) Defendant has not shown vindictiveness; and

---

[10] For the reasons stated in the government's Amended Memorandum in Support of Pretrial Detention, ECF No. 8, the government continues to recommend pretrial detention.

(4) dismissal is not an appropriate remedy for the harm alleged, the Court should deny Defendant's

Motion to Dismiss Indictment.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: /s/JOLIE F. ZIMMERMAN
D.C. Bar No. 465110
STUART D. ALLEN
D.C. Bar No. 1005102
Assistant United States Attorneys
National Security Section
U.S. Attorney's Office for the District of Columbia
601 D Street, NW
Washington, D.C. 20530
(202) 252-7220 (Zimmerman)
(202) 252-7794 (Allen)
jolie.zimmerman@usdoj.gov
stuart.allen@usdoj.gov

27