UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | 25-CR-104 (ABJ) |
| **TAYON WRIGHT** | : | |

**REPLY TO OPPOSITION TO MOTION TO DISMISS INDICTMENT**

Tayon Wright, through counsel, respectfully submits this reply to the government's opposition to his motion to dismiss. The government relies on its broad discretion to bring charges where it wants, its own determination that Mr. Wright is not being harassed or vindictively prosecuted, and that there is nothing exceptional or unusual about his case. At the time of filing this response, Mr. Wright has been detained over one year, approximately 8 months and 25 days after he should have been brought to trial in D.C. Superior Court. The government has fought to keep him detained. The government delayed in providing discovery for his defense in Superior Court. And at the 11th hour when he was supposed to go to trial, the government sought another delay. In the District of Columbia, "defendants suffer to the extent that they are far more likely to be charged, convicted, and punished under two different statutory schemes." *United States v. Sumler*, 136 F.3d 188, 191 (D.C. Cir. 1998). To make matters worse, the government delayed in bringing him to federal court to face charges after securing an indictment on April 10, 2025. For all of these reasons, Mr. Wright's case should be dismissed with prejudice to prevent him from being further prosecuted in this case again.

The Supreme Court has set forth the appropriate framework for determining whether the government has violated a defendant's Sixth Amendment right to a speedy trial, finding that a

fact-based balancing test—approaching each case on an ad hoc basis—is appropriate. *Barker v. Wingo*, 407 U.S. 538, 530 (1972). The Court identified four factors for courts to consider: "Length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id*.

Before addressing the *Barker* factors, the government registers several general complaints about the result of the weighing of the factors here. ECF No. 16 at 10-18. These complaints, however, do not alter the analysis of the *Barker* factors.

***First***, the government complains that it has broad discretion when and whether to institute or dismiss criminal proceedings. ECF No. 16 at 10. However, that free rein cannot run afoul of a defendant's constitutional rights. *See United States v. Mills*, 964 F.2d 1186, 1193 (D.C. Cir. 1992) ("The argument that the *Robertson* [1] rule gives the U.S. Attorney unlimited discretion to transfer cases from Superior Court 'months, even years' after the initial arrest, … ignores the Sixth Amendment's role.") (inner citation omitted). "When delay results from the discretionary choices of the U.S. Attorney, the Government must be prepared to explain those choices and ensure that the rights of the accused do not suffer." *United States v. Gaffney*, No. 25-cr-282-SLS-ZMF, Order, ECF No. 26 at 37. "When the prosecutor fails to set out expeditiously in presenting a charge or bringing a case to trial, both public justice and the rights of the accused are gravely harmed. Rule 48(b) dismissal is one of the tools courts may use to address this harm." *Id*. Absent some check on the government's exercise of its authority to prosecute in federal and local courts, the government could park every potential federal case in Superior Court and build-in 100 days of detention with no trial before starting the process in federal court. The Sixth Amendment is the check against such abuse of authority.

---

[1] *United States v. Robertson*, 810 F.2d 254 (D.C. Cir. 1987).

***Second***, the government argues that an arrest for a D.C. Code offense is not an arrest for a federal offense and does not trigger the Speedy Trial clock. ECF No. 16 at 11. However, because the U.S. Attorney's Office for the District of Columbia prosecutes individuals in both this Court and the Superior Court, "the Constitution offers District defendants unique protections." *Gaffney*, ECF No. 26 at 16 (citations omitted). "[U]nlike state prosecutions, the Constitution's speedy trial clock begins at arrest or indictment for either a federal or D.C. Code violation." *Id.* (citations omitted). Furthermore, to trigger inquiry into a constitutional speedy trial claim, "an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay since, by definition, he cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness." *Doggett v. United States*, 505 U.S. 647, 651-52 (1992). There is no set term that marks that threshold, although the Supreme Court has indicated that delays that approach one year cross the threshold, *id.* at 652 n. 1, and the D.C. Circuit has suggested that delays of six months trigger further inquiry, *United States v Jones*, 524 F.2d 834, 849 (D.C. Cir. 1975).

***Third***, the government argues that Mr. Wright was not denied due process when it chose to charge him in District Court. ECF No. 16 at 12. However, Mr. Wright has been prejudiced by the delay. "[T]he Supreme Court has held that pre-indictment delay factors into the Sixth Amendment inquiry beginning at arrest." *Gaffney*, ECF No. 26 at 20 n.8 (citations omitted). In addition, a "delay prior to arrest or indictment may give rise to a due process claim under the Fifth Amendment." *United States v. MacDonald*, 456 U.S. 1, 2 (1982). The passage of time has prejudiced Mr. Wright. He was arrested on November 19, 2024. He was scheduled for trial in

3

March 2025.  His case was dismissed without prejudice, which leaves the possibility he could still be prosecuted in Superior Court.  The government moved the case to federal court, restarting the entire process, requiring new appointed defense counsel, causing a lengthier delay, and waiting 5 months to arrest him after knowing where he was located, violating Mr. Wright's constitutional right to a speedy trial.

*Fourth*, the government makes the self-serving argument that it has not engaged in prosecutorial harassment or vindictiveness.  ECF No. 16 at 13.  The government argues that even though the motion to suppress which was filed in January 2025 was not scheduled to be heard until the morning of trial in March, it did not engage in vindictiveness in bringing the case to federal court in April 2025.  To be clear, in Superior Court, Mr. Wright's defense counsel not only filed a motion to suppress on January 23, 2025, he also filed a motion to bifurcate elements involving prior convictions and a motion to preclude evidence of flight, as well as a notice of an expert, on January 23, 2025.  Approximately one month later on February 24, 2025, he filed a motion in limine to exclude questioning prospective jurors about previous arrests and a motion to dismiss under Second Amendment arounds.  Undoubtedly, the grant of any of these motions would have had an impact on the case.  While the government argues that it was a change in policy that led to the case being brought to federal court in April 2025, there is no explanation for why it took 5 months for the government to bring Mr. Wright to federal court after knowing he was in Maryland.

*Fifth*, the government argues that Mr. Wright has suffered no prejudicial delay cognizable under the Sixth Amendment's Speedy Trial Clause, focusing on the argument that this is not an "unusual" case.  ECF No. 16 at 17–18.  The Court must consider when the defendant was arrested and when a trial may have occurred absent the delays caused by the

government in order to assess whether an unnecessary delay has occurred. The Court must look to the individual facts and not assess the case on a mechanical timeline. Here, the government filed charges in Superior Court and trial was scheduled for March 10, 2025. The government thwarted that trial date and caused prejudicial delay by waiting more than 100 days after Mr. Wright's arrest—while he was detained—and then obtaining an indictment in federal court, causing any trial in this matter to be delayed further. And then, the government failed to bring Mr. Wright to court for 5 months.

Not only is the delay obvious, the advantage to the government is also obvious: the government avoided a trial in March 2025, and more importantly, avoided resolution of Mr. Wright's meritorious motions, while Mr. Wright continues to sit in a cell without a trial.

Weighing the four factors set forth in *Barker v. Wingo*, 407 U.S. 538, 530 (1972), demonstrates that the delay between Mr. Wright's arrest and prosecution in this Court violated his constitutional right to a speedy trial.

### 1. *Length of Delay.*

The length of the delay here is ongoing. Mr. Wright was scheduled for trial in Superior Court on March 10, 2025. The government thwarted that trial. The delay between his arrest on November 19, 2024, and detention and the indictment in this case was 142 days. The delay between his arrest and when he was presented in this Court is 300 days.

The government argues the 5 months Mr. Wright was in Maryland does not count toward the delay. However, the government has given no explanation as to why it did not writ Mr. Wright to this Court to face the federal charges. The U.S. Attorney's Office files writs while defendants are pending state offenses on a regular basis. Hence, the 300-day delay triggers the *Barker* analysis.

### 2. *Reason for Delay.*

The government acknowledges that it is responsible for the pre-trial delay from Mr. Wright being first charged in Superior Court. ECF No. 16 at 22. However, the government takes no responsibility from the time thereafter. Mr. Wright's trial was scheduled for March 10, 2025. Mr. Wright was prepared to move forward on that date and in January 2025, filed a motion to suppress which the Superior Court would have heard on that date. The delays resulting from the transfer—including the need to relitigate detention and the lack of counsel to work the case while the government delayed bringing him to this Court—are the result of the government's conduct. The government cannot shift blame because its conduct forced the defense to oppose further detention. The delay is solely attributable to the government.

When a pretrial delay occurs, the burden is on the government to justify the delay. *United States v. Graham*, 128 F.3d 372, 374 (6th Cir. 1997); *United States v. Fernandes*, 618 F. Supp. 2d 62, 68 (D.D.C. 2009). The government may choose to hide behind the delays in the Maryland case, but doing so does not relieve it of its burden or excuse its failures. The failure to offer a legitimate explanation for the delay should be weighed heavily against the government.

### 3. *Assertion of Right.*

Mr. Wright invoked his right to a speedy trial at the earliest moment in this case and often. This factor weighs in favor of dismissal.

### 4. *Prejudice to Defendant.*

In *Barker*, the Court noted three types of prejudice from unreasonable pretrial delays: "oppressive pretrial incarceration," "anxiety and concern of the accused," and "the possibility that the [defendant's] defense will be impaired[.]" *Barker*, 407 U.S. at 532. In *Doggett*, the

government asked the Court to find that the effect on the fair adjudication of a case is not significantly protected by the Sixth Amendment. 505 U.S. at 654-55. The Court ruled that such an argument "asked [the Court], in effect to read part of *Barker* right out of the law[.]" *Id.* Here, the government attempts "in effect" to write the remaining two types of prejudice out of *Barker*, arguing that because Mr. Wright can point to no prejudice to his defense, the prejudice was insufficient for this factor to support a Sixth Amendment violation. As the Court in *Doggett* noted, "Once triggered by arrest, indictment, or other official accusation . . . the speedy trial enquiry must weigh the effect of delay on the accused's defense just as it has to weigh any other form of prejudice that *Barker* recognized." 505 U.S. at 655. Thus, pretrial incarceration and the anxiety and concern of the accused are forms of prejudice caused by delay that are just as important as impairment to the defense.

The government argues that Mr. Wright's detention has not impacted the evidence in this case since much of it is captured on Body-Worn Camera. ECF No. 16 at 25. However, "the Supreme Court has held a defendant need not make an affirmative showing of evidentiary prejudice to succeed under the inquiry." *Gaffney*, ECF No. 26 at 31 (citing *Doggett*, 505 U.S. at 657).

"Indeed, 'the Speedy Trial Clause's core concern is impairment of liberty' through pretrial detention." *Gaffney*, ECF No. 26 at 31 (quoting *United States v. Loud Hawk*, 474 U.S. 302, 312 (1986)). Mr. Wright was incarcerated at the D.C. jail for three and half months, concerned about his case and preparing for trial. He remained in Maryland for 5 months after the government indicted him. He was then brought to federal court without explanation only to learn that he would be appointed new counsel and not have trial as his previous counsel had been prepared for more than six months prior, and that he would need to wait to resolve his case while

7

continuing to be detained. He remains incarcerated with his life disrupted and even now continues to struggle to comprehend why he did not have trial on March 10, 2025. The stress of such circumstances is obvious. *See United States v. Brown*, 520 F.2d 1106, 1112 (D.C. Cir. 1975) ("Though we cannot measure in an accurate manner the degree of personal prejudice to [a defendant], we cannot ignore it," because "a man isolated in prison is powerless to exert his own investigative efforts" and "mitigate these e[]rosive effects of the passage of time."); *see also United States v. Taylor*, 487 U.S. 326, 340 (1988) ("The longer the delay, the greater the presumptive or actual prejudice to the defendant, in terms of his ability to prepare for trial or the restrictions on his liberty," for "'whether he is free on bail or not, . . . [the delay] may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.'" (quoting *Barker v. Wingo,* 407 U.S. 514, 537 (1972) (White, J., concurring) (quoting *United States v. Marion,* 404 U.S. 307, 320 (1971))).

Moreover, his pretrial detention has been oppressive. "DOC's rate of deaths in custody in CDF and CTF during the audit period is over 3½ times the average mortality rate in U.S. jails,"[2] according to a recent D.C. report, auditing conditions at the D.C. Jails. In addition, the audit "document[s] a crisis marked by rising deaths, structural decay, staff shortages, and inadequate medical and behavioral health care."[3]

---

[2] Kathleen Patterson, District of Columbia Auditor, Office of the District of Columbia Auditor, *Urgent Need for New D.C. Jail*, May 28, 2025, at p. 48, available at https://cdn.prod.website-files.com/659c0df344c9c8325dd821ca/6837197775af1c53f8f34cf0_JailUpdate_Web_v5.pdf,
[3] The Council for Court Excellence, *New Report on Jail Confirms Unsafe Conditions and Rising Deaths, Calls for Immediate Action*, May 28, 2025, available at https://www.courtexcellence.org/news-items/2025-jail-audit#:~:text=Conditions%20of%20Jail%20Facilities.,such%20housing%20monthly%20in%20FY23.

**Conclusion**

The government has been emboldened to let cases sit in Superior Court—particularly when a defendant is detained and seeking trial—for as long as possible under the applicable D.C. statutes (100 days) – and then dismiss that case and restart the process in federal court thereby disregarding any interest in or right to a speedy trial. The Court should impose the only consequence with teeth in this context: dismissal with prejudice. As the Supreme Court recognized: "It is self-evident that dismissal with prejudice always sends a stronger message than dismissal without prejudice, and is more likely to induce salutary changes in procedures, reducing pretrial delays." *Taylor*, 487 U.S. at 342.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____
UBONG E. AKPAN
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500